## MOORE *v.* ILLINOIS CENTRAL RAILROAD CO.

No. 550. Argued March 12, 1941.—Decided March 31, 1941.

---

*Messrs. George Butler* and *Garner W. Green* submitted for petitioner.

*Mr. James L. Byrd,* with whom *Messrs. Clinton H. McKay, E. C. Craig* and *V. W. Foster* were on the brief, for respondent.

*Solicitor General Biddle* and *Mr. Robert L. Stern* filed a brief on behalf of the United States, as *amicus curiae,* submitting views of the construction of the Railway Labor Act, as amended.

Mr. Justice Black delivered the opinion of the Court.

We granted certiorari in this case, 311 U. S. 643, to review a judgment in which the Circuit Court of Appeals applied a Mississippi statute of limitations contrary to the Mississippi Supreme Court's application of the same statute to the same plea in the same case. Compare *Moore* v. *Illinois Central Railroad Co.,* 180 Miss. 276; 176 So. 593, with *Illinois Central Railroad Co.* v. *Moore,* 112 F. 2d 959.

Petitioner Moore, a member of the Brotherhood of Railroad Trainmen, brought suit for damages against respondent railroad company in a Mississippi state court, claiming that he had been wrongfully discharged contrary to the terms of a contract between the Trainmen and the railroad, a copy of the contract being attached to the complaint as an exhibit. Petitioner alleged that as a member of the Trainmen he was entitled to all the benefits of the contract. Judgment on the pleadings was rendered against Moore by the trial court. Upon appeal the Mississippi Supreme Court reversed and remanded. One of the railroad's pleas was that the contract of employment between Moore and the railroad was verbal, rather than written, and that any action thereon was therefore barred by the three year statute of limitations provided by § 2299 of the Mississippi Code of 1930. With reference to this plea the Mississippi Supreme Court said: "The appellant's suit is not on a verbal contract between him and the appellee, but on a written contract made with the appellee, for appellant's benefit, by the Brotherhood of Railroad Trainmen; consequently, section 2299, Code of 1930, has no application, and the time within which appellant could sue is six years under section 2292, Code of 1930." *Moore* v. *Illinois Central R. Co., supra,* 291.

After the remand by the Mississippi Supreme Court, Moore amended his bill to ask damages in excess of $3000, and the railroad removed the case to the federal courts. The District Court, considering itself bound by state law, held that the Mississippi three year statute of limitations did not apply,[1] but on this point the Circuit Court of Appeals reversed,[2] declining to follow the

---

[1] 24 F. Supp. 731.
[2] 112 F. 2d 959.

Mississippi Supreme Court's ruling. Calling attention to the fact that the Mississippi Supreme Court does not regard itself as bound by a decision upon a second appeal, the Circuit Court of Appeals (one judge dissenting) said: "Since the removal of the case to the federal court this court stands in the place of the Supreme Court of Mississippi and with the same power of reconsideration." But the Circuit Courts of Appeals do not have the same power to reconsider interpretations of state law by state courts as do the highest courts of the state in which a decision has been rendered. The Mississippi Supreme Court had the power to reconsider and overrule its former interpretation, but the court below did not. And in the absence of a change by the Mississippi legislature, the court below could reconsider and depart from the ruling of the highest court of Mississippi on Mississippi's statute of limitations only to the extent, if any, that examination of the later opinions of the Mississippi Supreme Court showed that it had changed its earlier interpretation of the effect of the Mississippi statute. *Wichita Royalty Co.* v. *City National Bank,* 306 U. S. 103, 107; cf. *West* v. *American Telephone & Telegraph Co.,* 311 U. S. 223; *Fidelity Union Trust Co.* v. *Field,* 311 U. S. 169. But the court below did not rely upon any change brought about by the Mississippi legislature or the Mississippi Supreme Court. On the contrary, it concluded that it should reëxamine the law because there was involved the interpretation and application of a collective contract of an interstate railroad with its employees. The court below also based its failure to follow the Mississippi Supreme Court's decision in Moore's case on the ground that in an earlier case the Mississippi Supreme Court had said that the three year statute applied unless a contract was "wholly provable in writing," a situation which the court below did not think existed

here.[3] But even before the decision in *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, the federal courts applied state statutes of limitations in accordance with the interpretations given to such statutes by the states' highest courts. As early as 1893, this Court said: "The construction given to a statute [of limitations] of a State by the highest judicial tribunal of such State is regarded as a part of the statute, and is as binding upon the courts of the United States as the text. If the highest judicial tribunal of a State adopt new views as to the proper construction of such a statute, and reverse its former decisions, this court will follow the latest settled adjudications."[4] It was error for the court below to depart from the Mississippi Supreme Court's interpretation of the state statute of limitations.

But respondent says that there is another reason why the judgment in its favor should be sustained.[5] This reason, according to respondent, is that both the District Court and the Circuit Court of Appeals erred in failing to hold that Moore's suit was prematurely brought because of his failure to exhaust the administrative remedies granted him by the Railway Labor Act, 44 Stat. 577, as amended, 48 Stat. 1185, 45 U. S. C. § 151, *et seq.* But we find nothing in that Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court. In support of its contention, the railroad points especially to § 153 (i), which, as amended in 1934, pro-

---

[3] *City of Hattiesburg* v. *Cobb Bros. Construction Co.,* 174 Miss. 20; 163 So. 676.

[4] *Bauserman* v. *Blunt,* 147 U. S. 647, 654, quoting from *Leffingwell* v. *Warren,* 2 Black 599, 603. And see *Balkam* v. *Woodstock Iron Co.,* 154 U. S. 177, 187.

[5] Cf. *Helvering* v. *Gowran,* 302 U. S. 238.

vides that disputes growing out of grievances or out of the interpretation or application of agreements "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes." And in connection with this statutory language the railroad also directs our attention to a provision in the agreement between the Trainmen and the railroad— a provision authorizing Moore to submit his complaint to officials of the railroad, offer witnesses before them, appeal to higher officers of the company in case the decision should be unsatisfactory, and obtain reinstatement and pay for time lost if officials of the railroad should find that his suspension or dismissal was unjust. It is to be noted that the section pointed out, § 153 (i), as amended in 1934, provides no more than that disputes "may be referred . . . to the . . . Adjustment Board . . ." It is significant that the comparable section of the 1926 Railway Labor Act (44 Stat. 577, 578) had, before the 1934 amendment, provided that upon failure of the parties to reach an adjustment a "dispute shall be referred to the designated Adjustment Board by the parties, or by either party . . ." This difference in language, substituting "may" for "shall," was not, we think, an indication of a change in policy, but was instead a clarification of the law's original purpose. For neither the original 1926 Act, nor the Act as amended in 1934, indicates that the machinery provided for settling disputes was based on a philosophy of legal compulsion. On the contrary, the legislative history of the Railway Labor Act shows a consistent purpose on the part of

Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature.[6] The District Court and the Circuit Court of Appeals properly decided that petitioner was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge. But, for failure to follow state law on the state statute of limitations, the judgment of the Circuit Court of Appeals is reversed; the judgment of the District Court is affirmed.

*Reversed.*

Mr. Justice Frankfurter concurs in the result.

---

[6] See, e. g., H. Rep. No. 328, 69th Cong., 1st Sess., p. 4.