BRADLEY, Judge.
This appeal results from an order by the Circuit Court of Mobile County granting defendants-appellees’ motion for summary judgment pursuant to Rule 56(c), Alabama Rules of Civil Procedure.
The dispute out of which this appeal arose began in February of 1975 when the defendant (Local 1410 of the International Longshoremen’s Association) notified its union membership, including the plaintiffs (Alex Smith, Giles Lovett, Garfield Wash *751 ington, Alfred Nickerson, Amos Conner, George Everett, Anderson Stevens, Otis McClain and James Stevens, Sr.) that they were no longer entitled to receive payments from Local 1410’s pension fund. The basis of defendant’s action was that the continuation of pension payments would violate a new pension reform act which the union had promulgated.
The plaintiffs were notified of the defendant’s action by a letter dated February 19, 1975 and signed by the secretary-treasurer of Local 1410. In April of the same year the plaintiffs filed a complaint in the Circuit Court of Mobile County against Local 1410. However, the plaintiffs’ cause of action was subsequently dismissed without prejudice on the ground that the plaintiffs had failed to exhaust their internal union appeal process.
Almost two years after the filing of their initial suit, on March 16,1977, the plaintiffs brought a class action against the defendants, Local 1410 and its president, George Dixon. On April 26, 1977 the defendants filed a motion to dismiss the plaintiffs’ suit. Thereafter the plaintiffs requested that the Mobile County Circuit Court provide them with class action treatment. However, on July 27, 1977, in an affidavit attached to defendants’ motion to deny plaintiffs’ request for class action treatment, the secretary-treasurer of ILA Local 1410 stated that he had examined union records and determined that the potential class members had not filed an appeal through the grievance procedure provided by the constitution and bylaws of ILA Local 1410, and that as a consequence, the potential class members had not exhausted the internal appeal process of the union. A similar affidavit was filed with a motion to dismiss defendant-George Dixon as a representative of Local 1410. Defendants also filed a motion for summary judgment on the grounds that, “Plaintiffs have not exhausted the internal grievance procedure required by Article VIII [sic XIII] of the Constitution and By-Laws of ILA Local 1410 and the International Longshoremen’s Association, Article XIX . . . .” Attached to this motion was yet another affidavit by the secretary-treasurer of Local 1410 which stated essentially that the named plaintiffs had not filed an appeal with their union representative before initiating their lawsuit.
The plaintiffs subsequently filed an affidavit in opposition to the various motions which had been made by the defendants. The plaintiffs’ affidavit contained statements by an attorney who had represented the plaintiffs in 1975. The attorney stated that he had filed a claim against Local 1410 in 1975 and that the claim had been dismissed by the Mobile County Circuit Court on the ground that his clients had failed to exhaust their internal union appeal process. The affidavit continued by indicating that letters concerning the plaintiffs’ claims had been sent in October of 1976 to the president of Local 1410 (George Dixon) and to the secretary-treasurer of the South Atlantic and Gulf Coast District of the International Longshoremen’s Association (J. H. Raspberry). The attorney received an unsatisfactory reply to his inquiries from Raspberry, upon which the attorney again wrote Raspberry requesting a determination of the plaintiffs’ appeal as soon as possible. Raspberry did not respond to the second letter, and so the attorney again wrote Raspberry in December of 1976 and demanded that the latter reply to the attorney’s letter requesting a determination of the plaintiffs’ appeal. Consequently, the affidavit of the attorney concluded by stating that the International Longshoremen’s Association had refused to honor the appeal process and that the plaintiffs had no power as individuals to compel the union to follow the appeal process. Thus, the attorney contended that the plaintiffs had been denied the remedies available through the process of an appeal to their union.
The letters discussed above were attached to the attorney’s affidavit and one letter, which was addressed to Raspberry, expressly requested that the letter be deemed an appeal from Local 1410’s refusal to provide the plaintiffs their pension payments. Moreover, the series of correspondence attached to the affidavit of the attorney dem *752 onstrates that Raspberry wrote to Local 1410’s president, George Dixon, and suggested that Dixon advise the lawyer who represented the plaintiffs to contact Local 1410’s attorney. Counsel for the plaintiffs responded to that letter by writing to Raspberry:
“Please be advised that a law suit had been filed previously at which time I was dealing with attorneys for the Local and that case was dismissed on the grounds that I had not exhausted the Inter Union appeal process. Please be advised that I am not interested in talking with any attorneys here locally in as much as I have already done so ánd I was unable to reach any type of an agreement with them.
“My letter to you of November 3,1976, was an appeal of the Local Unions denial of my clients’ claim and I wish a decision from the district level as soon as possible.”
Upon receipt of the affidavit of the lawyer who had represented plaintiffs in their 1975 suit, the defendants filed a fourth affidavit by the secretary-treasurer of Local 1410 in support of the defendants’ motion for summary judgment. Attached to this affidavit were copies of the constitution, bylaws and rules of order for Local 1410. These documents set out an appeal procedure to be used by union members who felt aggrieved by the actions of their union. Article XIII, section 9 of the constitution of Local 1410 establishes that each local union is governed by its executive board and that the board shall exercise general supervision over the local’s property and affairs. Section 9(a) also provides that the board shall have such powers as are necessary or appropriate to effectuate the authority granted to it by Local 1410’s constitution and by the bylaws of the local union. Among these powers is the executive board’s authority under Article XIX, section 1 to hear appeals resulting from any “action, failure to act or decision in the exercise of the [board’s] original or appellate jurisdiction.” Moreover, Article XIX, section 1, provides a hierarchy for the appeal process, beginning with an appeal from an action by a local union official (which must be taken to the executive board), and culminating with an appeal to the convention of the International Longshoremen’s Association. Continuing, Article XIX, section 3, establishes that all appeals must be in writing and filed with the secretary of the body to which they are addressed within thirty days after the rendition of the decision from which the appeal was taken unless a longer period for initiating an appeal is permitted.
On the basis of the affidavits, letters and the constitution of Local 1410 the parties’ dispute was submitted to the trial court for its consideration of the defendants’ motion for summary judgment. After an examination of pleadings and affidavits presented by the parties, the trial court granted the defendants’ motion for summary judgment on the grounds that the plaintiffs had failed to exhaust the internal grievance procedure required by the constitution of ILA Local 1410. From the trial court’s order dismissing their suit plaintiffs appeal.
On appeal, plaintiffs contend that under the United States Supreme Court’s decision in N.L.R.B. v. Industrial Union of Marine & Ship. Workers, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968), a union member is not required to prolong his efforts to enforce his rights by means of the internal grievance procedures of his union beyond four months. Plaintiffs assert that in the instant case they pursued their grievance for over four months and that, as a consequence of this fact, they were entitled to initiate a lawsuit even though the union grievance procedure had not been exhausted. Alternatively, plaintiffs claim that in view of the affidavits submitted in this ease, there exists a genuine issue as to whether the plaintiffs had exhausted the ILA’s internal procedures for appealing a decision by a local union official. We find that there is no merit to either of plaintiffs’ contentions.
In regard to plaintiffs’ argument that their local union needlessly prolonged the internal appeal process beyond four months *753 thus justifying the filing of a legal action by plaintiffs, we have carefully examined the Supreme Court’s decision in Industrial Union of Marine & Ship. Workers, and do not find it applicable to the present case. The Supreme Court’s opinion in Industrial Union of Marine & Ship. Workers indicates only that the Court concluded that unions were authorized to have a hearing procedure for processing the grievances of their members, provided such procedures did not consume more than four months of time. Labor-Management Reporting and Disclosure Act of 1959, § 101(a)(4); 29 U.S.C.A., § 411(a)(4). And if the procedures were deemed to have consumed more than four months of time or if circumstances justified legal action prior to the end of the four month period, a court or agency could consider whether a particular procedure was “reasonable” and entertain the complaint even though the grievance procedures had not been exhausted.
However, basic to the conclusion reached in Industrial Union of Marine & Ship. Workers is that the complaining party seek to utilize the grievance process. See Republic Steel Corporation v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Hayes v. Alabama Dry Docks & Shipbuilding Co., 295 Ala. 216, 326 So.2d 289 (1976). In other words, labor policy requires, that individuals who wish to assert grievances must attempt to use 'the grievance procedure provided by their union as the mode of redress. A contrary rule would permit an individual union member to completely ignore available grievance procedures in favor of a lawsuit. Such activity would have little to commend it since it would deprive the union of the opportunity to undertake a settlement of its member’s grievance. Moreover, to allow an individual to sidestep the procedures provided by his union constitution would reduce the effectiveness of a uniform method for orderly settlement of grievances by union members.
Consequently, it is only when the union refuses to acknowledge the member’s grievance or only perfunctorily processes the individual’s claim that a court may consider whether the manner in which the procedure is used is “reasonable” and thus entertain the individual’s complaint even though he has not exhausted his grievance procedures.[1] See N.L.R.B. v. Industrial Union of Marine & Ship. Workers, supra.
In the instant case there was no evidence that the defendants or their officials refused to acknowledge the plaintiffs’ grievance or needlessly prolonged the procedure which the plaintiffs were required to follow in order to obtain relief. Instead, the union did not take any action with regard to the plaintiffs’ complaint because the plaintiffs did not follow the procedures mandated by the constitution of ILA Local 1410. These procedures required: (1) that the plaintiffs file notice within thirty days after the rendition of the decision from which the appeal was taken; (2) that notice of the appeal be in writing and filed with the secretary of the local’s executive board; and (3) that any appeal resulting from the failure of any officer of the local to act be taken to the executive board of Local 1410. From the affidavits and correspondence submitted to the trial court it is clear that the plaintiffs did not comply' with any of these requirements.
Rather than file their grievance within thirty days after their union notified them that they would no longer receive pension payments, the plaintiffs initiated a lawsuit. When their legal action was dismissed under Rule 56(c), ARCP, the plaintiffs then sought to proceed under the terms of their local’s constitution. However, their appeal from the action of the union on February 19,1975 was dated October 4,1976, approximately nineteen months after their grievance arose and well outside the thirty day limitation for filing complaints. Moreover, plaintiffs filed their grievance with the secretary of the district council for the South Atlantic and Gulf Coast District of the International Longshoremen’s Association *754 rather than the secretary of the executive board of their local as specified in Article XIX, section 3 of Local 1410’s constitution. Finally, even if this court accepted the plaintiffs’ argument that their local officials had deliberately failed to respond to the complaint of-the plaintiffs in an effort to deprive the latter of their remedy under the constitution of Local 1410, the proper procedure in such a situation would require a valid effort by the plaintiffs to use the process set out in their local’s constitution, i. e. an appeal to the executive board of Local 1410. The plaintiffs, however, did not attempt to use the proper procedure, choosing instead to file their lawsuit. This action sidestepped available grievance procedures in favor of litigation and was a violation of the terms of Local 1410’s constitution.
In view of the fact that the plaintiffs never initiated their grievance with the local union in the proper manner nor sought to complete the grievance process, we are not prepared to hold that the union refused to consider plaintiffs’ complaint or undertook a perfunctory review of the latter’s grievance; consequently, it was necessary for the plaintiffs to exhaust the internal grievance procedure of their union before the circuit court could consider their lawsuit.
Likewise, there is nothing in the record to support the plaintiffs’ claim that the affidavits submitted by the parties in this case demonstrate a genuine issue as to whether the plaintiffs had exhausted the internal procedures for appealing the decision of their local union officials. Accordingly, the judgment of the trial court dismissing plaintiffs’ action under Rule 56(c), ARCP, is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.

. The Alabama Supreme Court in Hayes v. Alabama Dry Docks & Shipbuilding Co., 295 Ala. 216, 326 So.2d 289 (1976), recognized that state law is preempted by federal labor law.